**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.    22-10053 |
| Plaintiff-Appellee, | D.C. No. 2:14-cr-00858-SPL-1 |
| v. | |
| STEVEN AUDETTE, AKA Steven Dale Audette, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Steven Paul Logan, District Judge, Presiding

Submitted May 15, 2023[**]
Phoenix, Arizona

Before:  NGUYEN, COLLINS, and LEE, Circuit Judges.

Steven Audette appeals the sentence imposed by the district court following

a remand from this court for resentencing.  Audette also contends that his

resentencing counsel provided ineffective assistance.  We have jurisdiction under

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument.  See Fed. R. App. P. 34(a)(2).

18 U.S.C. § 3742 and 28 U.S.C. § 1291. Reviewing the district court's factual findings for clear error, and its application of the Sentencing Guidelines to the facts for abuse of discretion, *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc), we affirm.[1]

1.      Audette contends that the district court erred in calculating the total offense level (TOL) under the Sentencing Guidelines. In particular, he contests (1) the sixteen-level increase for a loss amount of $3.4 million, U.S. Sent'g Guidelines Manual § 2B1.1(b)(1) (U.S. Sent'g Comm'n 2016); (2) the two-level increase for an offense involving ten or more victims, *id.* § 2B1.1(b)(2); and (3) the two-level increase for targeting a vulnerable victim, *id.* § 3A1.1(b).

First, the district court's calculation of a $3.4 million loss amount was not clearly erroneous. This determination was based on a ledger in which Audette hand-recorded the funds each victim gave him and on a summary chart reflecting the information in the ledger. Audette contends that the ledger was unreliable because it contained errors and included entries for loans he had not yet received and money he intended to gift rather than repay. However, Agent Darryl Hill of the Bureau of Alcohol, Tobacco, Firearms and Explosives testified that Audette informed him of the ledger and its location during the execution of a search

---

[1] Because the parties are familiar with the facts, we recite them only as necessary to resolve the appeal.

warrant at Audette's residence. Hill audio-recorded Audette's explanation of his ledger, which Audette described as containing "the list of the people [he] borrowed money from from day one," and which indicated a grand total of $3.4 million. The testimony of IRS Criminal Investigation Special Agent Scott Kennedy as to the summary chart he prepared similarly supports the loss calculation. While it is true that the summary chart identified errors in the ledger, Kennedy testified that these were merely mathematical errors in some *subtotals*; the ledger's grand total remained accurate. In addition, Kennedy testified that he corroborated dozens of ledger entries by cross-referencing bank records.[2]

Second, the record supports the district court's finding of ten or more victims. Audette claims that only the three victims whose losses were included in the restitution amount should count for purposes of the ten-or-more-victims enhancement. But he conflates actual loss and restitution. The restitution amount of $2.1 million was based only on the two victims who affirmatively requested restitution. But a victim who suffers an actual loss still counts as a "victim" even if that individual does not request restitution. *See* U.S. Sent'g Guidelines Manual § 2B1.1 cmt. n.1 (U.S. Sent'g Comm'n 2016) ("'Victim' means . . . any person

---

[2] The loss amount Audette pressed at the original sentencing hearing was $2.1 million, which would have resulted in the same TOL calculation under the applicable 2016 U.S. Sentencing Guidelines Manual. Thus, even if the district court had erred, the error would be harmless.

who sustained any part of the actual loss determined under subsection (b)(1) . . . ."); *id.* cmt. n.3 ("'Actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense."). Audette has consistently admitted that his ledger listed people who gave him money. Again, we reject his argument that the ledger, which listed more than ten victims, was unreliable.

Finally, the district court's finding that Louise Moore qualifies as a "vulnerable victim" is amply supported by the record. U.S. Sent'g Guidelines Manual § 3A1.1(b) (U.S. Sent'g Comm'n 2016). Audette argues that the determination was based on age alone, in violation of *United States v. Luca*, 183 F.3d 1018 (9th Cir. 1999). In *Luca*, the district court made insufficient findings to support an age-based enhancement because it "did not identify . . . specific individuals whose ages rendered them particularly vulnerable," and it "made no other age-based findings." *Id.* at 1026. We therefore remanded for "specific fact findings regarding the vulnerability of [the defendant's] victims." *Id.* at 1028. In contrast, the district court here made individualized findings at the original sentencing hearing about Moore's vulnerability. It found that Audette knew or should have known that Moore was vulnerable based on her age and physical disabilities, which Audette treated as a medical professional. It further found that Audette exploited Moore's fear for the physical safety of her family members by making threats to her and her daughter—including a threat that the limbs of

4

Moore's two-year-old grandchild would be severed if Moore did not provide money. *See United States v. James,* 139 F.3d 709, 714–15 (9th Cir. 1998). The district court noted that Moore gave Audette over $2.5 million, more than any other victim, over a lengthy period. *See United States v. Randall*, 162 F.3d 557, 560 (9th Cir. 1998).

2. Audette argues that his resentencing counsel provided unconstitutionally deficient representation. As a "general rule," we do not review ineffective assistance of counsel claims on direct appeal. *United States v. McGowan,* 668 F.3d 601, 605 (9th Cir. 2012); *see United States v. Pope,* 841 F.2d 954, 958 (9th Cir. 1988) ("Challenge by way of a habeas corpus proceeding is preferable as it permits the defendant to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted."). Audette claims that an "extraordinary exception[]," *McGowan*, 668 F.3d at 605, to this general rule applies. But we disagree that the performance of Audette's resentencing counsel was "so inadequate that it obviously denie[d] [him] his Sixth Amendment right to counsel." *Id.* (citation omitted). We thus decline to review the ineffective assistance of counsel claim on direct appeal.

**AFFIRMED.**

5